IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MICHAEL McILMAIL,                                  :
                                                   :
                    Plaintiff,                     :
                                                   :
            v.                                     :
                                                   :
COMMONWEALTH OF                                    :         JURY TRIAL DEMANDED
PENNSYLVANIA OFFICE                                :
OF ATTORNEY GENERAL, WILLIAM                       :
RALSTON, in his individual and official           :
capacity, CHARLES CRAWFORD in his                 :
individual and official capacity and              :
JONATHAN DUECKER in his                           :
individual and official capacity, JOHN            :
DOES, 1-5                                          :
                    Defendants                     :
                                                   :


## **COMPLAINT**


Plaintiff Michael McIlmail ("Plaintiff"), by and through his undersigned counsel, hereby

complains of Defendants Commonwealth of Pennsylvania Office of Attorney General (POAG),

William Ralston ("Ralston"), Charles Crawford ("Crawford") and Jonathan Duecker (Duecker)

(collectively "Defendants), as follows:

1. Plaintiff's Complaint is brought against Defendants through 42 U.S.C. S 1983 for

violation of Plaintiff's rights under the First Amendment, Fourteenth Amendment and 42 U.S.C.

§ 1981, as well as under Pennsylvania law for violation of Pennsylvania's Whistleblower Law,

43 P.S. 1421, *et seq.*, and Pennsylvania's Human Relations Act, 43 P.S. § 951, *et seq.*

## PARTIES

2.    Plaintiff is a competent adult individual residing at 123 Dale Road, Willow Grove, Pennsylvania, 19090.

3.    Defendant POAG is a governmental agency of the Commonwealth of Pennsylvania with a principal place of business located at 16th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120.

4.    For almost twenty years, until his constructive discharge in November of 2014, Plaintiff was employed by the POAG, and was assigned for sixteen of those years with the Organized Crime Unit of the POAG, whose regional headquarters were located at 1000 Madison Ave., Norristown, Pa. 19403

5.    Defendant Crawford is a competent adult individual maintaining a business address, at all times relevant and material hereto, at 1000 Madison Ave., Norristown, PA.

6.    Defendant Ralston is a competent adult individual maintaining a business address, at all times relevant and material hereto, at 1000 Madison Ave., Norristown, PA.

7.    At all times relevant and material hereto, Defendant Ralston was employed by Defendant POAG with the Organized Crime Unit as a Supervisory Agent for the Organized Crime Unit Regional Office and was Plaintiff's immediate supervisor.

8.    At all times relevant and material hereto, Defendant Crawford was employed by Defendant POAG with the Organized Crime Unit as a Regional Director and was Plaintiff's second line supervisor.

9.    Defendant Duecker is a competent adult individual, whose primary business address at all times relevant and material hereto, was 16th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120.

10.    At all times relevant and material hereto, Defendant Duecker was employed by Defendant POAG and was ultimately promoted to Chief of Staff.

11.     At all times relevant and material hereto, Defendants Ralston, Crawford, and Duecker, were agents and/or employees of Defendant POAG, acting under color of state law.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331 and supplemental jurisdiction pursuant to 28 U.S.C. 1367, and Plaintiff filed his claims with the Equal Employment Opportunity Commission  received his Right to Sue Letter from the on April 3, 2017.

13.     Venue is property in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. 1391.

## FACTUAL ALLEGATIONS

14.     Plaintiff was employed by the Pennsylvania Office of Attorney General (POAG)N for 19 years and 9 months as a Narcotics Agent II, and was assigned to the Organized Crime Unit for approximately the last 16 years of his years employed with the POAG.

15.     Plaintiff is currently sixty-one (61) years of age, and at the time of his constructive discharge by Defendant POAG, was fifty-eight (58) years of age, with a date of birth of February 29, 1956.

16.     At all times prior to 2014, Plaintiff had received satisfactory or better evaluations in the performance of his duties.

17.     Defendant POAG's intention to remove and replace older workers was made clear in statements about and actions toward older workers beginning in 2013 and continuing thereafter.

18.     Specific instances of age-based actions include, but are not limited to: reassignment or discharge of older employees, negative comments about older employees, and statements as to the desirability of removing older employees.

19.     Defendant POAG, by and through its agents and employees, especially Defendant Duecker, sought to remove and replace all older agents, such as Plaintiff.

20.   Defendant Duecker was heard telling people, "old people, I need to get rid of them."

21.   As an agent in his late fifties, Plaintiff was one of the "old people" Defendant Duecker wished to remove solely because of their age.

22.   Plaintiff also suffered adverse employment action related to his relationship with the Roman Catholic Diocese of Philadelphia and its clergy leadership.

23.   Plaintiff is a lifelong practicing Roman Catholic.

24.   Plaintiff's son died in October of 2013, as a direct result of unlawful actions by agents and employees of the Roman Catholic Church, and particularly, the Roman Catholic Diocese of Philadelphia.

25.   Plaintiff's son was the victim of sexual abuse as a minor, and shortly before a hearing in litigation arising from same, died of a drug overdose.

26.   Within two weeks of burying his son, Plaintiff was back on duty, performing to his usual high standard.

27.   Within weeks of burying his son, Plaintiff was participating in undercover narcotics purchases.

28.   From October 28, 2013 until March 21, 2014, Plaintiff worked his regular duties as a narcotics agent, which included writing reports, making undercover purchases, testifying before the Grand Jury.

29.   During that same period, Plaintiff also served as evidence custodian for the Organized Crime Unit and was responsible for logging every piece of evidence from all the Organized Crime Unit's cases, transporting drugs to and from the Lima, PA lab, and completing reports on each item.

30.   During that same period, Plaintiff also met with and interviewed informants, cultivated new informants, met with the FBI weekly, and worked with the FBI on a large-scale drug trafficking case that had its origins in Guatemala, South America.

31.   On March 22, 2014, Plaintiff, along with his wife, son, and daughter, drove to the Basilica of Saints Peter and Paul in Philadelphia, PA, to join a group of people that were either victims of clergy sexual abuse or family and supporters of those abused by Roman Catholic clergy.

32.     On that date, March 22, 2014, Archbishop Chaput was holding a healing mass inside the Basilica for victims of clergy sexual abuse; Plaintiff and his family were not invited to attend the healing mass.

33.     Plaintiff did not give any interviews on March 22, 2014, nor did he give consent to any reporters to use his photograph or his presence at the event in any way.

34.     Despite his lack of consent, Plaintiff's picture was included in a Philadelphia Inquirer article about Archbishop Chaput and the healing mass that appeared in the Sunday edition on March 23, 2014.

35.     When Plaintiff reported for work on Monday, March 24, 2014, he was approached within minutes of arriving at his desk by his supervisor, defendant Ralston, who told him he could not participate in the arrest scheduled to take place that week because the Regional Director, defendant Crawford, saw his picture in the Sunday paper the day before.

36.     Defendant Ralston never said that there was any concern that Plaintiff's undercover status had been compromised by the picture in the paper nor did he provide Plaintiff with any law enforcement reason why he had to be removed from the scheduled arrest.

37.     On or about that same day, March 24, 2014, Plaintiff's coworker, Agent John Gregory, was called in to the office of Curt Smith, head of the Child Predator Unit and asked if Plaintiff was fit to participate in the scheduled arrests.

38.     Agent Gregory stated that Plaintiff was completely fit for duty and that there was no concern over his participating in the arrest, which assurance Chief Smith said was "good enough" for him.

39.     Subsequent to that conversation taking place, Defendants Ralston and Crawford acted to remove Plaintiff from participation in the arrests due to Plaintiff's participation in protected free speech.

40.     At no time between the death of Plaintiff's son in October, 2013, and the adverse action taken against him in March, 2014, had any question ever been raised about his fitness for duty as a result of his son's death.

41.     The undercover purchases for the undercover case Plaintiff had been working on at that time had ended as of March 22, 2014, subpoenas had issued and it was continuing in the Grand Jury.

42.    Plaintiff's entire unit, the Organized Crime Unit had been told the prior week that they would be assisting the Child Predator Unit in arrests for three days the week of March 24, 2014, from which assignment Plaintiff was removed by defendants.

43.    Aside from being removed from participating in the planned arrests with the Child Predator Unit, Plaintiff performed his usual duties.

44.    On or about April 3, 2014, defendant Duecker called Plaintiff into his office and spoke to him for approximately forty-five minutes.

45.    Defendant Duecker told Plaintiff he had "good news and bad news" for him.

46.    Defendant Duecker said the "good news" was that Plaintiff would now be working directly for Chief Duecker.

47.    Defendant Duecker said the "bad news" was that Plaintiff was being investigated by the Office of Professional Responsibility (O.P.R.).

48.    Plaintiff asked why he was being investigated, as he had done nothing wrong, but was told by defendant Duecker that he did not know anything about the investigation and that in the interim, while being investigated, Plaintiff would work for him.

49.    Plaintiff did not receive timely formal notice of the charges being made that gave rise to the investigation against him, what evidence had been adduced to lead to the investigation, or the parameters of the investigation

50.    During this meeting on or about April 3, 2014, defendant Duecker asked Plaintiff to give him his gun and badge.

51.    Plaintiff asked why he was being asked to turn in his gun and badge and was told that it was simply procedure.

52.    Plaintiff complied with defendant Duecker's request and turned over to him his credentials and weapon.

53.    From this point forward, Plaintiff ceased to function as a narcotics agent and was placed on administrative duty but with little to do in that capacity.

54.    Plaintiff was subsequently informed that it was not procedure for his weapon and credentials to have been seized by defendant Duecker.

55.    In the April 3, 2014 meeting, defendant Duecker also asked Plaintiff if he was friends with "Deery," referencing POAG employee Tim Deery.

56.     Plaintiff informed defendant Duecker that he was on friendly terms with Deery and all his coworkers, that they got along and worked as a unit.

57.     The meeting ended shortly after that exchange.

58.     After the April 3, 2014 meeting with defendant Duecker, Plaintiff ceased to be permitted to function as a narcotics agent and instead performed such tasks as obtaining tickets for the POAG so that it could have a D.A.R.E. vehicle at the Maple Grove Speedway while drag racing was taking place.

59.     Plaintiff was told that the taking of his weapon and credentials was due to "Harrisburg" becoming aware that his son had died from a drug overdose.

60.     Plaintiff's son had died from a drug overdose almost six months before the action taken against him in April of 2014.

61.     Plaintiff asked if defendant POAG wanted him to be evaluated and voluntarily saw a psychologist, which evaluation was arranged by and paid for by Lodge #5 of the F.O.P.

62.     Dr. Paul M. DiKlum evaluated Plaintiff on or about April 8, 2014, and fully cleared him for his usual duties as a narcotics agent, and saw no reason Plaintiff could not carry his weapon and credentials and perform his usual and customary law enforcement duties.

63.     The results of the evaluation were made available to defendants.

64.     On or about April 10, 2014, still working without his credentials or weapon, Plaintiff communicated with defendants Crawford and Ralston via email, asking what protocol he should follow if a situation should arise during work in light of his unarmed status.

65.     Defendant Crawford replied that his request for protocol as an unarmed law enforcement officer was being sent "up the chain of command" and that Plaintiff would have an answer by the end of the day.

66.     Despite defendant Crawford's representation, Plaintiff never received any answer or even a response from Defendants to his question regarding protocol in light of his unarmed status.

67.     On or about April 28, 2014, Plaintiff attended an O.P.R. meeting in Harrisburg with his FOP lawyer.

68.     During the April 28, 2014 O.P.R. meeting, Plaintiff was asked about informants, cigarettes, B-forms, and a license plate.

69.     On or about June 3, 2014, Plaintiff met with an Inspector Nickoles from O.P.R. in order to review his prior interview, which was presented in written form, and sign same.

70.     On or about July 30, 2014, Plaintiff, along with two other agents, attended a Pre-Disciplinary Hearing with Labor Relations Coordinator for the POAG, George Moore, as well as two other persons.; Labor Relations Coordinator Moore conducted the hearing.

71.     Labor Relations Coordinator Moore listened to Plaintiff's testimony and considered evidence of what had taken place.

72.     Labor Relations Coordinator Moore stated that Plaintiff's weapon and credentials never should have been taken from him and assured Plaintiff, with respect to his weapon, "that shouldn't have happened. You will get it back soon."

73.     On or about July 31, 2014, Plaintiff took an extra license plate that he had in his possession to his FOP lawyer to turn in; the plate was a putative reason for the O.P.R. investigation.

74.     On or about Monday, August 4, 2014, Defendant Duecker told Plaintiff that he would get his weapon and credentials back the next day, Tuesday, August 5, 2014; Plaintiff replied that he was off the following day and Defendant Duecker responded then that he would get them back on Wednesday, August 6, 2014.

75.     Plaintiff subsequently learned from Defendant Crawford that the return of his weapon, which was done by Defendant Duecker on August 6, 2014, was delayed due to Defendant Duecker having to retrieve it from his home.

76.     Upon information and belief, Defendant violated POAG policy and all reasonable safety considerations by keeping Plaintiff's weapon at his, Duecker's residence, after requiring Plaintiff to hand his weapon over to him.

77.     On or about that same date, August 4, 2014, Labor Relations Coordinator George Moore communicated to Plaintiff that he was "alright," that the O.P.R. investigation revealed no reason Plaintiff could not return to his usual duties and that Labor Relations Coordinator Moore was recommending that Plaintiff go "back to what you do best on the street" so that he could again work with the Federal Bureau of Investigation (FBI).

78.     On or about Tuesday, August 19, 2014, Plaintiff, who had not yet been assigned back to his normal duties, again met with Duecker, who talked to him about Maple Glen Raceway.

79. On or about August 28, 2014, Plaintiff had to qualify with his service weapon and personal weapon at 1532 S. Front St., Philadelphia, PA.

80. On or about Wednesday, September 10, 2014, Plaintiff advised FOP counsel, Melissa Weber, Esq., that he had received a call from the FBI Special Agent he had been working with previous to the O.P.R. investigation, that his Federal Deputy status would expire at the end of September 2014, and a supervisor needed to sign off on the paperwork to maintain his Federal Deputy status.

81. The FBI needed Plaintiff to retain his status as a Federal Duty in order for him to return to work on a prior Title #3 action that he had worked on and which was reaching a significant stage that required Plaintiff's participation.

82. Attorney Weber forwarded the request to Labor Relations Coordinator George Moore via email that same day with the request that he contact Defendant Duecker and get back to her so that she could respond to Plaintiff.

83. No response was given to Plaintiff before his Federal Deputy status expired at the end of September 2014.

84. Plaintiff worked the weekend of October 3 to 5, 2014 at the Maple Grove Raceway, handing out D.A.R.E. literature to children and adults.

85. On or about October 29, 2014, Plaintiff received an email from O.P.R. stating he was to report to them on Tuesday, November 4, 2014, regarding an investigation into pornographic emails.

86. On November 4, 2014, Plaintiff reported to Harrisburg with F.O.P. attorney Larry Moran, Esq., to review tapes.

87. On November 5, 2014, Plaintiff received a phone call from Attorney Moran wherein Moran told Plaintiff that there is a "target on your back" and that he should consider retiring.

88. Also on Wednesday, November 5, 2014, Attorney Moran stated in a phone conversation with Plaintiff that "you have a target on your back, it's high up and it's Catholic."

89. On November 6, 2014, Attorney Moran told Plaintiff that if he did not retire, defendant POAG was going to fire him.

90. On November 7, 2014, Attorney Weber also informed Plaintiff that defendant POAG has a "target on your back" and that if he did not retire, he would be fired.

91.    Attorney Weber told Plaintiff on November 7, 2014, that she would prepare his retirement letter as he had no choice but to retire due to reported punitive action being taken against him by Defendant POAG.

92.    Plaintiff was told that if he retired instead of being fired, he would be permitted to retain all of his health coverage, including for his spouse, who has a serious medical condition; this proved to be untrue.

93.    At the time that he was forced to retire, Plaintiff was mere months from completing twenty (20) years' time with Defendant POAG.

94.    Plaintiff subsequently learned from a POAG document that was provided to him by a reporter investigating the POAG's actions that the O.P.R. had recommended only that he receive a two-week suspension as a result of the investigation into pornographic emails, and no discipline with respect to any other claims against him.

95.    Upon information and belief, the recommendation for a two week suspension was made by Labor Relations Coordinator George Moore, who was subsequently fired in retaliation for his recommendation that Defendant Duecker be discharged.

96.    Plaintiff had not intended to retire for several years but was forced to do so by the Defendants' unlawful and unconstitutional actions and motivations.

97.    Upon information and belief, Defendants Duecker and supervisors at the POAG made statements expressing their decision to replace older white male employees in order to promote "diversity."

98.    Other older white male employees of Defendant POAG were placed on desk duty and subjected to "investigations" that led to their termination or forced resignations during the same period Plaintiff was, and they were replaced by inexperienced, minority employees.

99.    Plaintiff believes, and therefore avers, that a pattern was established on the part of Defendants of removing highly qualified older white males and replacing them with minorities who were not nearly as qualified.

## <u>COUNT I</u>

**Fourteenth Amendment Pre-Deprivation Procedural Due Process Violation Brought
Pursuant 42 U.S.C. 1983**

Plaintiff v. Defendants Crawford, Ralston, and Duecker, individually and in their official
capacities

100.    Plaintiff repeats and incorporates by reference the allegations set forth in
paragraphs One Hundred (1) through ninety-nine (99), as though set forth again at length.

101.    At all times relevant and material hereto, the terms and conditions of Plaintiff's
public employment as a Narcotics Officer Il at Defendant POAG were governed by the
provisions of a collective bargaining agreement ("CBA") between the Narcotics Agents
Regional Committee ("NARC") and the POAG.

102.    The CBA provided, *inter alia,* that "[t]he employer shall not demote, suspend,
discharge or take any disciplinary action against an employee without just cause."

103.    The "just cause" provision of the CBA, grants Plaintiff a property interest in his
continued public employment as a Narcotics Officer Il protected under the Fourteenth
Amendment of the United States Constitution.

104.    The deprivation of a protected property interest in public employment must be
preceded by notice and an opportunity to be heard.

105.    On April 3, 2014, Defendants Crawford, Ralston, and Duecker took Plaintiff off
the street, prohibited him from participating in operational activities and reassigned Plaintiff to
administrative desk duty.

106.    Plaintiff was not provided with notice or an opportunity to be heard in connection
with Defendants action changing Plaintiff's employment status.

107.    Defendants' reassignment of Plaintiff to administrative desk duty significantly
altered and limited Plaintiff's duties.

108.    Defendant Duecker's removal of Plaintiff's weapon and credentials exposed him
to risk of harm and was taken without proper notice or just cause.

109.    Defendants Crawford and Ralston, as Plaintiff's first and second line supervisors,
were complicit in the removal of Plaintiff's weapon and credentials.

110. Defendants Crawford and Ralston knowingly or intentionally caused and/or contributed to working conditions and operational decisions that led to the alleged reasons for the first O.P.R. investigation against Plaintiff.

111. Defendants' reassignment of Plaintiff to administrative desk duty removed Plaintiff as a Federal Deputy.

112. Defendants' reassignment of Plaintiff to administrative desk duty eliminated Plaintiff's opportunity for promotion within the POAG and carried much less prestige.

113. Defendants' reassignment of Plaintiff to administrative desk duty, accompanied as it was by a lack of any administrative duties, was a punitive measure taken without due process or just cause.

114. Defendants' reassignment of Plaintiff to administrative desk duty eliminated Plaintiff's ability to work overtime and earn overtime pay.

115. At all times relevant and material hereto, Defendants were POAG policymakers and were acting under color of state law.

116. Plaintiff was not afforded constitutionally adequate pre-deprivation procedural due process prior to his April 3, 2014 reassignment to administrative desk duty and removal of his weapon and credentials.

117. Defendants intentionally violated Plaintiff's Fourteenth Amendment pre-deprivation procedural due process rights.

118. The foregoing violations of Plaintiff's constitutional rights were done with malice and ill-will towards Plaintiff or with a reckless disregard for Plaintiff's constitutional and civil rights.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a. Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney General as against Defendants Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.      Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.      Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.      Punitive damages in an amount to be determined by a jury against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.      All costs and reasonable attorney's fees against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.      Such other relief that this Court deems proper and just.


## COUNT II

**First Amendment Retaliation Brought Pursuant 42 US.C. 1983
Speech Clause and Petition Clause**

Plaintiff v. Defendants Crawford, Ralston, and Duecker,
in their individual and official capacities

119.    Plaintiff incorporates by reference paragraphs one (1) through One Hundred, Eighteen (118) above as if set forth again herein at length.

120.    Plaintiff was photographed by an employee of the regional newspaper, the Philadelphia Inquirer, while engaged in private, free speech activity on Saturday, March 22, 2014, which was a regular day off from work for him.

121.    Despite Plaintiff not consenting to the use of his photograph, it was published in the Sunday, March 23, 2014 edition of the Philadelphia Inquirer, accompanied by a story on the Roman Catholic Church and its response to priests' sexual abuse of minors, of which Plaintiff's son had been a victim.

122. Immediately upon his return to work, Plaintiff was confronted about his appearance at the event by his supervisor, Defendant Ralston.

123. Plaintiff was told by Defendant Ralston that he could not participate in his scheduled duties for that week, which were to include three days assisting in arrests, due to the fact that Defendant Crawford saw Plaintiff's picture in the paper.

124. Defendant Ralston never identified any legitimate law enforcement grounds for removing Plaintiff from the arrest team, and in fact, all his undercover work at that time had completed the undercover stage and was before the Grand Jury; the action was taken solely in response to his participation in a protest against the Roman Catholic Church.

125. Plaintiff was caused humiliation and embarrassment as a result of this action, since the entire Organized Crime Unit had been told he and others would be assisting the Child Predator Unit in arrests for three days during the week of March 24, 2014.

126. Plaintiff lost the opportunity to participate in a high-profile arrest due to Defendants Ralston and Crawford's response to his exercise of free speech.

127. Defendants Ralston and Crawford acting in their official capacities, took adverse action against Plaintiff as a direct result of his exercise of protected free speech.

128. There is a causal connection between Plaintiff's First Amendment protected activity and Defendants Ralston and Crawford's reassignment of Plaintiff to administrative desk duty on March 24, 2014.

129. There is a causal connection between Plaintiff's First Amendment protected activity and Defendant Duecker's reassignment of Plaintiff to purported administrative desk duty working directly for Defendant Duecker.

130. Defendant Duecker acting in his official capacity, took adverse action against Plaintiff as a direct result of his exercise of protected free speech.

131. At all times relevant and material hereto, Defendants Duecker, Ralston, and Crawford were policymakers acting under color of state law.

132. Plaintiff was intentionally discriminated against in violation of First Amendment rights.

133. The foregoing violations of Plaintiff's constitutional rights were done with malice and ill-will towards Plaintiff or with a reckless disregard for Plaintiff's constitutional and civil rights.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney General as against Defendants Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT III

### 42 USC. 1981 Reverse Race Discrimination In Employment Claim Brought Pursuant 42 U.S.C. 1983

Plaintiff v. Defendants Duecker, Crawford, and Ralston, in their individual and official capacities

134.    Plaintiff incorporates by reference paragraphs one (1) through One Hundred, Thirty-three (133) above as if set forth herein again at length.

135.    Prior to his constructive discharge, each and every defendant make statements that evidenced their desire to reduce the number of white male employees in the POAG and to diversify the office.

136.    Plaintiff is a white male.

137.    Plaintiff's constructive discharge was motivated, in whole or in part, by the desire of defendants, or one or more of them, to decrease the number of white males in the office and to diversify the office.

138.    This action was taken by the defendants, or one of more of them, under color of state law.

139.    This action was in violation of plaintiff's rights guaranteed by the Constitution and actionable under 42 U.S.C. 1983.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent Il with the Pennsylvania Office of Attorney General as against Defendants Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT IV

### 42 USC.2000e et seq.  Reverse Race Discrimination in Employment Claim Brought Pursuant 42 U.S.C. 2000-e (Title VII)

Plaintiff v. Defendants POAG and Duecker, Crawford, and Ralston, in their individual and official capacities.

140.    Plaintiff repeats and incorporates by reference paragraphs one (1) through One Hundred, Thirty-nine (139) above as if set forth herein again at length herein.

141.    Prior to his constructive discharge, plaintiff heard the individual defendants make statements that evidenced their desire to reduce the number of white male employees in the POAG and to diversify the office.

142.    Plaintiff is a white male.

143.    Plaintiff's constructive discharge was motivated, in whole or in part, by the desire of defendants, or one or more of them, to decrease the number of white males in the office and to diversify the office.

144.    This action was taken by the defendants, or one of more of them, under color of state law.

145.    This action was in violation of plaintiff's rights guaranteed by Title VII of the Civil Rights act of 1964, 42 USC 2000e et seq.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent Il with the Pennsylvania Office of Attorney General as against Defendants Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants POAG and Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT V

### Discrimination in Employment Related to Religious Activities Under Title VII, 42 USC 2000e et seq.

Defendants Duecker, Crawford, and Ralston, in their individual and official capacities.

146.    Plaintiff repeats and incorporates by reference paragraphs one (1) through one hundred, Forty-five (145) above as if set forth herein again at length herein.

147.    Plaintiff is a Roman Catholic who has been involved in protesting clerical sexual abuse within the church.

148.    A photo of plaintiff engaging in protest against the Roman Catholic Church in Philadelphia on March 22, 2014 appeared in the Philadelphia Inquirer the following day, on March 23, 2014, without his consent.

149.    Immediately after, defendant Crawford indicated to defendant Ralston that he had seen the photo of plaintiff.

150.    On March 24, 2014, defendants Ralston, Crawford, and Duecker began to treat plaintiff differently, altering his work duties in a manner that was detrimental to him and ultimately contributed to his constructive discharge.

151.    This differential treatment was the result of plaintiff's religious beliefs and practices.

152.    The conduct of defendants Ralston, Crawford, and Duecker in discriminating against plaintiff due to his religious beliefs and practices was in violation of Title VII, 42 USC 2000e et seq.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney General as against Defendants Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants  Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants POAG and Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT VI
**Violation of the Labor Management Relations Act (LMRA) Section 301(a), 29 USC 185(a)**

Plaintiff v. Defendants POAG and Duecker, Crawford, and Ralston, in their individual and official capacities

153.    Plaintiff repeats and incorporates by reference paragraphs one (1) through One

Hundred, Fifty-two (152) above as if set forth herein again at length herein.

154. Plaintiff's employment with the POAG was governed by the provisions of the CBA.

155. The CBA provided plaintiff with certain procedural rights prior to the POAG taking any adverse employment actions against him.

156. Despite the existence of the right to a hearing and other procedures prior to the imposition of any adverse employment actions which led to his constructive discharge, plaintiff was denied any and all such procedural rights.

157. This action was taken by his employer, the POAG, and was effectuated by defendants Duecker, Crawford and /or Ralston.

158. These actions, and the denial of his rights afforded under the CBA, amounted to violations of the LMRA, Section 301(a).

159. Plaintiff was damaged by the defendants' violation of the LMRA, losing his job and suffering emotional damage and distress.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a. Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent Il with the Pennsylvania Office of Attorney General as against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b. Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c. Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants POAG and Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT VII

**42 USC.2000e et seq.  Age Discrimination In Employment Claim Brought Pursuant to 29 U.S.C. Section 621, et seq, and 29 U.S.C. 626 e (ADEA) and Pennsylvania Human Relations Act, PA Stat. Tit. 43 Section 951, et seq.**

Plaintiff v. Defendants POAG and Duecker, Crawford, and Ralston, in their individual and official capacities

160.    Plaintiff repeats and incorporates by reference paragraphs one (1) through One Hundred, Fifty-nine (159) above as if set forth herein again at length herein.

161.    Plaintiff was over 55 years of age at the time that he was forced to retire under threat of termination.

162.    During 2014, Defendants engaged in a course of conduct intended to remove older, experienced law enforcement agents such as Plaintiff and replace them with younger, inexperienced agents.

163.    Defendants actions against Plaintiff were motivated, in part, by their desire to remove all older agents from the POAG.

164.    Defendants acted in violation of state and federal law by taking adverse employment action against Plaintiff due to his age.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants   POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney

General as against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants   Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants POAG and Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.


## COUNT VIII

**Plaintiff Michael McIlmail v. Defendant Commonwealth of Pennsylvania Office of Attorney General**

Defendant POAG liability for action of its agents, servants, and employees.

165.    Plaintiff repeats and incorporates by reference paragraphs one (1) through One Hundred, Sixty-four (164) above as if set forth herein again at length herein.

166.    Defendant POAG was the employer of Defendants Duecker, Crawford, and Ralston.

167.    Defendants Duecker, Crawford, and Ralston took all the actions described herein while acting in their official capacities with Defendant POAG.

168.    Defendant POAG knew or should have known of the unlawful employment actions being taken by Defendants but neither stopped such action nor acted to prevent it from

occurring; instead, it ratified the unlawful actions by its employers, agents, and servants and took adverse action such as termination or discipline against any employee who recommended against or otherwise protested the unlawful actions.

169.    Plaintiff suffered harm as a result of Defendant POAG's complicity with the unlawful actions of Defendants.

170.    Plaintiff was constructively discharged as a result of Defendants' actions.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants  POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual and official capacities, as follows:

a.    Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney General as against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford in their official capacities only;

b.    Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendant POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

c.    Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants POAG, Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only.

d.    Punitive damages in an amount to be determined by a jury against Defendants  Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

e.    All costs and reasonable attorney's fees against Defendants POAG and Jonathan Duecker, William Ralston, and Charles Crawford, in their individual capacities only;

f.    Such other relief that this Court deems proper and just.

## COUNT IX

### Plaintiff Michael McIlmail v. Defendant John Does 1-5

171.   Plaintiff repeats and incorporates by reference paragraphs one (1) through One Hundred, Seventy (170) above as if set forth herein again at length herein.

172.   John Does 1-5 are individuals, acting individually or under the Color of State Law, whose identities were not correctly determined prior to the filing of this complaint, or about whom there were mistakes in identification.

173.   The allegations of Counts I through VIII apply to John Does 1-5 as if those allegations were raised against these defendants.

WHEREFORE, Plaintiff Michael McIlmail respectfully prays for judgment in his favor and against Defendants   John Does 1-5, in their individual and official capacities, as follows:

a.   Prospective injunctive relief in the form of Plaintiff Michael McIlmail's reinstatement to his prior position a Narcotics Agent II with the Pennsylvania Office of Attorney General as against Defendants John Does 1-5 in their official capacities only;

b.   Back pay and front pay, if necessary, plus pre-judgment and post-judgment interest against Defendants John Does 1-5 in their individual capacities only;

c.   Compensatory damages in an amount to be determined by a jury for all non-pecuniary losses suffered by Plaintiff Michael McIlmail, including, but not limited to, harm to reputation, personal humiliation, emotional distress and mental anguish against Defendants John Does 1-5, in their individual capacities only.

d.   Punitive damages in an amount to be determined by a jury against Defendants   John Does 1-5, in their individual capacities only;

e.   All costs and reasonable attorney's fees against Defendants John Does 1-5, in their individual capacities only;

f.   Such other relief that this Court deems proper and just.

PLEASE TAKE NOTICE that plaintiff, Michael McIlmail, demands a trial by jury in this matter.

Dated: June 29, 2017

Respectfully submitted,

By: _____

Donna L. Freidel, Esquire
PA Attorney No.: 42044
FREIDEL & KRAMER, P.C.
151 Fries Mill Road, Suite 404
Turnersville, NJ 08012
Phone: 856-232-2220
Fax: 856-232-4774
E-mail: dlfreidel@freidelkramerlaw.com
Attorney for Plaintiff